UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK MILKIEWICZ, PERSONAL
REPRESENTATIVE OF THE ESTATE OF
KERRIE MILKIEWICZ, DECEASED,

        Plaintiff,

v.

GENESEE COUNTY, SHERIFF ROBERT
PICKELL, OFFICER ERIC EARNS, DEPUTY
RYAN STRAUSS, DEPUTY ANDREA
WILLIAMS, DEPUTY ANDREW LANGDON,
SGT. MACEY, DEPUTY MERCER, DEPUTY
SWAIN, DEPUTY ALEXANDER CONLEY,
DEPUTY MCINTOSH, COURT OFFICER
GANSEN, JOHN AND JANE DOE
CORRECTIONS OFFICERS 1-3, DR. DENNIS
LLOYD, NURSE E. WELLS, NURSE
ANDREA, NURSE THERESA, CORIZON
CORRECTIONAL HEALTHCARE and
PRISON HEALTH SERVICES, INC.
Individually and Officially and Jointly and
Severally,

        Defendants.
_____/

Case No. 17-cv-13047

Paul D. Borman
United States District Judge

Anthony P. Patti
United States Magistrate Judge

## OPINION AND ORDER
### 1. GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (ECF #73)
### 2. DENYING AS MOOT DEFENDANTS LLOYD, WELLS, ANDREA, THERESA, AND CORZION HEALTH SERVICES, INC.'S (F/K/A PRISON HEALTH SERVICES) MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF #36)

1

# I. BACKGROUND

Before the Court is Plaintiff Mark Milkiewicz's Motion for Leave to File Second Amended Complaint. (ECF #73.) Plaintiff brings this action as the Personal Representative of the Estate of Kerrie Milkiewicz ("Milkiewicz"), a woman who died while incarcerated in the Genesee County Jail ("GCJ"). (Am. Compl., ECF #22, ¶¶6, 31, 47.) Milkiewicz passed away while suffering from high blood pressure and alcohol withdrawal (specifically, delirium tremens), which allegedly remained unaddressed by Defendants over a period of five days. (*Id.* at ¶¶41, 47.)

On September 15, 2017, Plaintiff filed his Complaint. (ECF #1.) On July 27, 2018, the Court entered a Stipulated Order allowing Plaintiff to file a First Amended Complaint. (ECF #21.) Also on July 27, 2018, Sheriff Robert Pickell was dismissed from this matter by Stipulated Order. (ECF #20.) Plaintiff filed his First Amended Complaint on August 2, 2018, which added Defendants Corizon Health, Inc. (f/k/a Prison Health Services, Inc.) and its employees Dr. Lloyd, and Nurses Wells, Andrea and Theresa (collectively, "Corizon Defendants"), among others. (ECF #22). The four-count First Amended Complaint alleged as follows:

> Count I - "Deliberate Indifference Violation of Civil Rights Pursuant to 42 USC §1983" (All Defendants except Genesee County and Sheriff Pickell)
>
> Count II - "Cruel and Unusual Punishment in Violation of the 4th, 8th and 14th Amendments" (All Defendants except Genesee County and Sheriff Pickell)

2

Count III - "42 USC §1983 – Monell Liability" (Genesee County, Sheriff Pickell, Corizon, Prison Health Services, and Defendants in their Official Capacities)

Count IV - "State Law Claims of Negligence, Gross Negligence, and/or Wanton and Willful Misconduct" [Presumably all Defendants, as the Count does not specify].

(Am. Compl., ECF #22.)

On September 10, 2018, the Corizon Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF #36.) Plaintiff filed his Response on October 1, 2018, requesting leave to file a second amended complaint if Defendants' Motion to Dismiss was to be granted. (ECF #42.) Plaintiff did not attach a proposed second amended complaint, as required by Local Court Rule 15.1. On October 12, 2018, Defendants filed their Reply. (ECF #51). In his Response, Plaintiff agreed to drop all *Monell* claims against the individual Corizon Defendants. (Oct. 1, 2018, Pl.'s Resp. to Defs.' Mot. to Dismiss, ECF #42, PgID 489.)

The Court held a hearing on the Motion to Dismiss on January 23, 2019. At that hearing, Plaintiff agreed to dismiss his gross negligence claim and merge his cruel and unusual claim and deliberate indifference claim into a single count. (Tr. Jan. 23, 2019 Hr'g, Defs.' Mot. to Dismiss Am. Compl., ECF #70, 11:8-10, 20:8-9, PgID 1215, 1224.)

On January 28, 2019, five days after the hearing on the Corizon Defendants' Motion to Dismiss and before the Court had rendered an opinion that Motion, Plaintiff filed the instant Motion for Leave to File Second Amended Complaint. (ECF #57.)

The attached Proposed Second Amended Complaint alleges three counts:

> Count I - "Deliberate Indifference Violation of Civil Rights Pursuant to 42 USC §1983" (All Defendants except Genesee County and Sheriff Pickell)
>
> Count II - "42 USC §1983 – Monell Liability" (Genesee County, Sheriff Pickell, Corizon, and Prison Health Services)
>
> Count III - "State Law Claims of Negligence against Each and Every Named Defendant, Gross Negligence as to Each and Every Named Defendant Except for the Corizon Defendants, and/or Wanton and Willful Misconduct"

(ECF #73-2.)

## II. FACTS

The facts are summarized predominantly from the First Amended Complaint. Any changes from the Proposed Second Amended Complaint will be identified.

Defendants Dr. Dennis Lloyd ("Lloyd"), Nurse E. Wells ("Wells"), Nurse Andrea ("Andrea"), and Nurse Theresa ("Theresa") allegedly "acted under color of law" as medical professionals for Defendant Corizon Health, Inc. (f/k/a co-

4

Defendant Prison Health Services, Inc. ("PHS")) ("Corizon,"[1] and collectively as "Corizon Defendants") and the GCJ. (1st Am. Compl., ECF #22, ¶¶22-25, "General Allegations.")

On March 16, 2017, Milkiewicz was confined to the GCJ by court order. (*Id.* at ¶31.) "Prior to being taken to the [GCJ], the Decedent's sister informed" a co-Defendant Court Officer that Milkiewicz "suffered from acute alcoholism and high blood pressure and was in immediate need of medical treatment." (*Id.* at ¶32.) "Defendants" ignored the information and placed Milkiewicz in a holding cell. (*Id.* at ¶33.)

Co-Defendants Deputies Strauss and Williams completed Milkiewicz's pre-booking questionnaire, who smelled intoxicants on Milkiewicz and saw that "she could barely stand up." (*Id.* at ¶¶34-35.) The pre-booking questionnaire noted that Milkiewicz "suffered from alcohol withdrawals, takes blood pressure medication and drinks alcohol daily." (*Id.* at ¶35.) Strauss further noted that Milkiewicz's blood alcohol content was "0.21 at 3[:]09." (*Id.* at ¶36.)

That same day, co-Defendant Deputy Langdon "completed a medical assessment of [Milkiewicz] and was aware of her alcohol withdrawals." (*Id.* at ¶39.) Milkiewicz informed Langdon of her doctor's name, that she needed immediate

---

[1] References to the corporate Defendant "Corizon" will include PHS throughout this Order.

medical treatment due to alcohol withdrawal, that she drank 6-12 beers daily, and that she used an inhaler. (*Id.*) Co-Defendants Langdon and Macey then placed Milkiewicz in a holding cell. (*Id.* at ¶40.)

The First Amended Complaint and Proposed Second Amended Complaint are identical until this point, where Plaintiff now makes essentially the same allegations regarding the individual Corizon Defendants, but refers to the specific individuals in each paragraph that sets forth their claimed knowledge and/or inaction. (Prop. 2d Am. Compl., ECF #73-2, ¶ 42, *et seq.*, PgID 1268.)

The Proposed Second Amended Complaint adds Paragraphs 42 and 43, alleging that, "At various times throughout [Milkiewicz's] incarceration from March 16, 2017 through March 21, 2017, while she was suffering from delirium tremens, she was seen by Defendants Dr. Dennis Lloyd and Nurses Andrea Rodgers [sic], Elizabeth Wells and Theresa Resta," who all "became aware that that [Milkiewicz] was suffering from delirium tremens from both their observations, the decedent's complaints and the concerns of deputies." (*Id.* at ¶42-43.) The allegations regarding individual Corizon Defendants' knowledge due to deputies expressing concern are new to the Proposed Second Amended Complaint. (*See also id.* at ¶45.)

Plaintiff further alleges that it was "obvious" to the individual Corizon Defendants that Milkiewicz was suffering from delirium tremens and required

immediate medical attention, yet they "continued to totally ignore her" despite pleas from cellmates and deputies. (*Id.* at ¶44-45.)

Each individual Corizon Defendant allegedly "at different times all observed" [Milkiewicz] laying on the "floors of the various cells to which she was moved" and observed symptoms "including but not limited to her moaning, jerking, convulsing and shaking and/or exhibiting the obvious and typical signs...of alcohol withdrawal/delirium tremens." (*Id.* at ¶46.) Despite this knowledge, Plaintiff alleges that "each and every Defendant failed to provide [Milkiewicz] with any medical treatment whatsoever and/or treatment that was so abysmal as to amount to no treatment at all...." (*Id.* at ¶47.)

Resuming allegations identical to those of the Amended Complaint, when a cellmate asked a deputy for help, the cellmate was removed, and Milkiewicz was left lying on the floor, rocking, moaning, and convulsing. (1st Am. Compl., ¶46; Prop. 2d Am. Compl., ¶48.) Milkiewicz did not receive medical attention from March 16, 2017 until March 21, 2017, the date of her death. (1st Am. Compl., ¶¶47, 49; Prop. 2d Am. Compl., ¶¶49, 51.)

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with the court's leave and that "the court should freely give leave when justice so requires." Denial of a motion to amend is appropriate, however, "where

7

there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

An amendment would be futile if the proposed amended complaint does not state a claim upon which relief can be based. A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678-79 (quotations and citation omitted).

## IV. ANALYSIS

**A. Undue Delay**

The Court should freely give parties leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). The Parties stipulated to Plaintiff's filing the First Amended Complaint, which added the Corizon Defendants. The Second Amended Complaint would be Plaintiff's first amendment with respect to those Defendants. Further, Plaintiff filed the instant Motion five days following the hearing on Defendants' Motion to Dismiss, which Defendants filed in lieu of an answer to the Amended Complaint. Moreover, per the Parties' email correspondence, only two depositions had taken place at the time the Motion for Leave to File Second Amended Complaint was filed. (Defs.' Resp., ECF #58-4, Ex. D, PgID 1113.) Therefore, the Court finds that there has been no undue delay in seeking leave to amend.

**B. Bad Faith**

The Corizon Defendants argue that Plaintiff has impermissibly and tactically pursued less favorable legal theories as previous theories against various Genesee County Defendants have failed. (Defs.' Resp., ECF #58, PgID 1092.) They cite *Indus. Assets, Inc. v. Capital Equip. Sales Co.*, 116 F.3d 1480, *4 (Table) (6th Cir. 1997) in support of their argument. That case, however, dealt with a wholly spurious claim that a plaintiff filed and was permitted to amend. It was then determined that the plaintiff knew that the claim was without merit at the time of filing, yet plead the

claim in order to divert attention from its own anticipatory repudiation of a contract at issue in the case. *Id.* The plaintiff then sought another route of recovery through an additional amended complaint, which the court disallowed based on the plaintiff's willful failure to file the proper claims in the first place. *Id.* In this case, Plaintiff is not engaging in that dubious type of *"seriatim"* pleading simply by seeking leave to amend facts regarding the same claims that it pursued in the Amended Complaint. The Court does not find that Plaintiff has acted in bad faith.

**C. Futility**

Amendment would not be entirely futile as Plaintiff has identified factual allegations that pertain to the individual Corizon Defendants in the Proposed Second Amended Complaint. Defendants argue that Plaintiff, at best, claims the individual Corizon Defendants failed to act, which cannot form the basis of a deliberate indifference claim. (Defs.' Resp., ECF #58, PgID 1087.) However, the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 842-43 (1994), held that the defendants' failure to act *despite knowledge of a substantial risk* was actionable, which is what Plaintiff has alleged. Defendants also unavailingly cite *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), where the Sixth Circuit refused to impose liability based on *respondeat superior* in a 1983 action on supervisors due to their failure to act.

However, the Parties' previous concessions/stipulations are not reflected in the Proposed Second Amended Complaint. Plaintiff conceded that any *Monell*

claims against the individual Corizon Defendants are duplicative and would be voluntarily dismissed, (Pl.'s Resp. to Defs.' Mot. to Dismiss, PgID 489, ECF #42), while Count I continues to allege *Monell* claims against the individual Corizon Defendants. (Prop. 2d Am. Compl., ECF #73-2, ¶¶ 60, 69, PgID 1273-74, 1063.) "That ship has sailed," as Plaintiff's Response to Defendants' Motion to Dismiss agreed to drop all *Monell* claims against the individual Corizon Defendants. Indeed, there are no amendments to Count I or the former Count II for cruel and unusual punishment – Plaintiff has merely deleted the caption of Count II while the identical verbiage remains as a continuation of the former Count I. In granting Plaintiff's Motion, the Court adopts the issues previously resolved in the Parties' briefing and in Plaintiff's concessions at the hearing on the Motion to Dismiss the First Amended Complaint.

Further, the Proposed Second Amended Complaint (even assuming Plaintiff addresses its present issues before filing a second amended pleading) does not cure the deficiencies in Plaintiff's *Monell* claims against Corizon. Regardless of whether Plaintiff has stated a claim against the individual Corizon Defendants, it is well established that a private corporation cannot be held liable under §1983 on a *respondeat superior* theory. *See Street v. Corrections Corp. of America*, 102 F.3d 810, 817–18 (6th Cir. 1996). Moreover, Plaintiff has gone no further than to allege in a conclusory manner that Corizon has a policy or practice that resulted in any

alleged constitutional violation. Vague allegations, for example, that Corizon is liable for deliberate indifference because "the aforementioned Defendants adopted, promulgated, encouraged, condoned, and/or tolerated official customs, policies, practices, and/or procedures, including failure to train, discipline and/or supervise its employees/agents," (Prop. 2d Am. Compl., Count I, ECF #73-2, ¶60, PgID 1273), or for "Monell Claims" because "the above-named Defendants knew or should have known that the policies, procedures, training[,] supervision and failure to discipline the corrections officers and/or medical staff were inadequate for the tasks that each Defendant was required to perform and in fact had resulted in previous deaths and/or injuries to inmates at Genesee County [Jail]," (*id.* at Count II, ¶74, PgID 1281), are far from sufficient to state a claim against Corizon. Therefore, it would be futile to grant leave to amend any *Monell* claims again Corizon (now merged with Prison Health Services). Therefore, to the extent Plaintiff seeks leave to further to pursue such claims against Corizon, the Motion is denied.

Insofar as Plaintiff seeks to amend Count IV, alleging state law claims for negligence, gross negligence, and willful/wantonness, the Court denies Plaintiff's Motion. Although the Proposed Second Amended Complaint does not include the Corizon Defendants in its purported claim for gross negligence as agreed to by the Parties (Tr. Jan. 23, 2019 Hr'g, Defs.' Mot. to Dismiss Am. Compl., ECF #70, 20:8-9, PgID 1224), the Court finds that what is now Count III in Proposed Second

Amended Complaint is an improper claim for medical malpractice against the Corizon Defendants couched in a claim for negligence.

A claim sounds in medical malpractice if: (1) it occurs within the course of a professional relationship; and (2) raises questions involving medical judgment. *Bryant v. Oakpointe Villa Nursing Ctr.*, 471 Mich. 411, 422 (2004). A professional relationship sufficient to support a claim of medical malpractice exists in those cases in which a licensed health care professional is subject to a contractual duty that required that professional to render health care services to a patient. *Id.* If the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue by experts, medical judgment is involved. *Id.* at 423. If the claim sounds in medical malpractice, it is "subject to the procedural and substantive requirements that govern" such actions. *Id.* at 422.

In this case, it is clear that the conduct at issue occurred within the course of a professional relationship, as Plaintiff alleges that the Corizon Defendants were required to provide medical care to Plaintiff. (Prop. 2d Am. Compl., ECF #73-2, PgID 1286.) Moreover, Paragraph 89(a)-(k) does not specify which Defendants allegedly failed to sufficiently perform which actions, yet several of the subparagraphs clearly pertain to the Corizon Defendants and require medical judgment. (*Id.* at PgID 1288.) For example, the failure to "properly train"

individuals with "care giving responsibilities" certainly is a matter outside of common knowledge requiring expert testimony, as are the failure to properly monitor allegations of subparagraphs a, h, and j. *Id.*; *Bryant* at 426 (allegations "concerning staffing decisions and patient monitoring involve questions of professional medical management and are not issues of ordinary negligence that can be judged by the common knowledge and experience of a jury"); *Stanley v. Wilson Cty.*, No. 3:03-0284, 2007 WL 2471693, at *3 (M.D. Tenn. Aug. 24, 2007) ("it can hardly be said *that the proper method of responding* to someone who is undergoing acute alcohol withdrawal or is experiencing delirium tremens is within the common knowledge of laymen") (emphasis added).[2] Any other allegation regarding the Corizon Defendants' treatment decisions involve medical judgment and are therefore medical malpractice claims.[3]

---

[2] *Bertl v. City of Westland*, No. 07-2547, 2009 WL 247907, at *5 (E.D. Mich. Feb. 2, 2009), cited by Plaintiff, does not address medical judgment in treating delirium tremens; the court in *Bertl* simply reiterated that delirium tremens constitutes a serious medical need recognizable by lay persons. That case and its predecessors do not state that the *treatment* necessary for delirium tremens is common knowledge.

[3] The allegations of Paragraph 89 (Prop. 2d Am. Compl., ECF #73-2, PgID 1288) are specific to medical treatment and therefore unlike the claim in *Bryant* for "failure to take steps," which the court determined sounds in ordinary negligence because a lay person would know that the defendants should have taken *some* sort of action. 471 Mich. at 430-31. Here, the allegations speak to specific actions that the Corizon Defendants should have taken with regards to Milkiewicz's care and treatment that would have required medical judgment and therefore sound in medical malpractice.

As such, Plaintiff did not satisfy Michigan's medical malpractice claim requirements. He failed to give notice prior to filing the Amended Complaint of his intent to sue the Corizon Defendants and failed to file an Affidavit of Merit to support his Amended Complaint, nor has he complied with or indicated that he intends to comply with those requirements regarding the Proposed Second Amended Complaint. MCL §§ 600.2912b, 600.2912d. Therefore, Plaintiff may not file the amended claims as plead in Count III of the Proposed Second Amended Complaint against the Corizon Defendants.

## V. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Leave to File Second Amended Complaint. (ECF #73). Plaintiff may file a Second Amended Complaint in accordance with this Opinion, excluding all *Monell* claims against the individual Corizon Defendants, and excluding the state law claims as plead in Count III against the Corizon Defendants. This Order DENIES AS MOOT Defendants Lloyd, Wells, Rodgers, Resta, and Corizon Health, Inc.'s (f/k/a/ Prison Health Services) Motion to Dismiss the First Amended Complaint. (ECF #36.)

IT IS SO ORDERED.

Paul D. Borman
United States District Judge

Dated: APR 19 2019